By the Court. Woodruff, J.
If the General Term will suffer their duties to be so far extended that, by consent of the parties, they will assume to determine all questions of fact and law, their labors will not only be greatly complicated, but will embrace a class of duties which the law has devolved upon others. We are called upon, on this occasion, to review the evidence taken, at what it would be a misnomer to call a trial, and to find the facts which, in general, it is the duty of the jury to find, and then to decide the law applicable to those facts. And this we are to do without having the witnesses before us, or any opportunity to judge of their intelligence, or, from their manner, to estimate the degree of confidence which ought to be reposed in the language they use.
We have, nevertheless, addressed ourselves to the subject, and if we should err in our conclusions of fact, we should regret more deeply than we now do, that the facts were not determined by the jury, who were empannelled for that express purpose.
(The opinion, after recapitulating the facts as above stated, proceeds as follows:)
Although the plaintiff was not (on the 12th of Hay, 1854) informed of the names of the defendants, he knew that Gildemeister was acting in this matter as the agent of the friend for whom he desired to procure the discount, and he received the notes and procured the discount with that knowledge.
*456 And although the agent, Gildemeister, told him, “as the $2,000 note of Ryder and Malony fell due before the other, to collect it and credit it in our account” (i. e. Gildemeister and Eeustaedter’s account), yet it does not appear that thi§ was for any other purpose than as security for the note so to be discounted. There was no express authority to apply the money which would be paid in, to any other indebtedness—nd other indebtedness then existed. As the note was made by third parties, who in due course of business might be expected to pay the note at its maturity, nothing was necessarily implied in this instruction but what it would be the plaintiff’s duty to do, and his right to do, if he retained possession of the two notes. And in view of the other testimony to the acts and admissions of the plaintiff, in relation to the notes in question, the just conclusion is, that he received and held the $2,000 note as collateral security for the note now in suit, and as security for that alone, and that ■ this was the actual understanding of the parties at the time. It was all that he required as a condition of getting the note discounted. It was all that there was any motive to offer him. It was all that Gildemeister could offer him, without practising what in judgment of law would be a fraud upon the. defendants. And the plaintiff having notice that Gildemeister was procuring the discount for a friend, knew, or had reason to know, that the securities offered belonged to the friend for whom he was acting, and he therefore knew that any application of the $2,000 note to any other debt would be a violation of the rights of such friend; at all events, there was enough to put him on enquiry.
The better conclusion is, that neither he nor Gildemeister contemplated any fraud; it is rather to be presumed that they did not; and the whole evidence, taken together, is not only in harmony with, but sustains the conclusion that the $2,000 note was received by him and held as collateral security for the note in suit, and for that only. He so treated it; he himself endorsed it with the term “ collateral.” He so used it, delivering it to the bank as security for the note in suit.
The conclusion is irresistible that the application of the proceeds of the $2,000 note to the note of Gildemeister and Ueustaedter, discounted the previous April, and not yet due, was an expedient resorted to by the plaintiff upon the failure of that *457 firm to divert a security, held for a different purpose, to a use to which it was not designed, and to which he had no right to apply " it, and to which he knew he had no right to apply it.
If this conclusion rested upon otherwise nicely balanced testimony, it would be greatly strengthened by the suspicious manner, out of the usual course of business, in which it was done. Applying it to a note not due for some eleven days thereafter, as if apprehensive that the friend for whom the note in suit was discounted would seek to arrest the money in that stage of the transaction; for at that time the plaintiff had no reason to suppose that the note was not paid in due course by the Messrs. Ryder and Malony.
The $2,000 note belonged to the defendants. It was placed. by them in the hands of Gildemeister as security only for the note in suit. It was placed by Gildemeister in the plaintiff’s hands for that purpose.
Gildemeister had no authority to use it for any other purpose.
The plaintiff made no advance upon it except to procure the discount of the note now in suit.
If Gildemeister attempted to authorize the plaintiff to apply its proceeds to any other debt, it was a fraud upon the defendants, and the plaintiff could only hold it for the amount of his advances or liabilities incurred upon the faith thereof.
But in truth the'whole evidence does not warrant us in finding that Gildemeister ever agreed that it might be applied to any other debt, or that the plaintiff received it upon that understanding, or condition, or that the defendants sanctioned such an application of it.
It is strenuously insisted that the payment of the $2,000 note, by the defendants themselves, pursuant to their’ arrangement with Ryder and Malony, was a voluntary payment to the use of the plaintiff, which placed the whole of the money at his free disposal, to be applied, if he thought proper, to the note he had endorsed and procured to be discounted for Gildemeister and Neustaedter.
The payment ought not to be so regarded. It was according to the intention of the parties, when the note was delivered (as security for the note in suit), that it would and should be paid at maturity. It was according to the natural, usual, and *458 regular course of business, that it should be so paid. The payment was in discharge of an express understanding with Ryder and Malony, that the defendants would pay it, and restore it to them. It was, therefore, their duty to pay it, as they did, without involving Ryder and Malony in any question or controversy on the subject.
The utmost that can reasonably be inferred from what may properly be regarded as a consent that the plaintiff credit the proceeds is, that he was to retain them until the note in suit became due. This is entirely consistent with the testimony of Grildemeister, and with the other evidence that the Ryder and Malony note was received by the plaintiff as collateral security for the note in suit only, and, when so understood, it was proper, and in accordance with an honorable regard to that understanding, for the defendants to pay in the money, as it was upon other grounds, above suggested, their duty to do.
It follows, from these views, that the plaintiff has not only been paid the amount of the note in suit, but he has also received the difference between the amount of that note, $1,288 27, and $2,000, which difference is the defendants’ money. This difference they demand, by way of counter-claim, in this action, and should be allowed to recover.
It seems to us, that under the view we have taken of the facts proved, there are no legal principles involved in regard to which there is doubt, or respecting which there was any difference between the counsel on the argument. It was rather the application of obvious and well settled rules, to the proofs, that was the subject of contention.
That, Grildemeister had no right to appropriate the note to his own debt, even if he attempted to do so, is quite clear, and that the plaintiff taking it in fraud of the defendants’ rights, could only claim to the extent of his advances upon the faith thereof, is not, since the case of Stalker v. McDonald, 6 Hill 93, open to discussion.
And, on the other hand, that money voluntarily paid to one who claims a right to receive it for his own use, and paid with knowledge of all the material facts, cannot be recovered back, is equally well settled. The cases cited by the plaintiff’s counsel are full to that effect.
*459 But in our judgment the facts proved in this case do not admit of the application of this latter principle.
Our conclusion is, that the defendants should have judgment for the sum of §716 73, with, interest from the time of the application of the money, May 24th, 1854, with the costs of the suit.